JUNE MARIE SULLIVAN, Plaintiff-Appellant, *v.* DARRELL GENE SULLIVAN, Defendant-Appellee.

Fifth District    No. 78-91

Opinion filed January 30, 1979.

Mitchell & Armstrong, Ltd., of Marion, for appellant.

David W. Watt, Jr., of Hendricks & Watt, of Murphysboro, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff June Marie Sullivan appeals to this court, challenging the propriety of numerous provisions contained in a divorce decree entered in the circuit court of Jackson County. Among other things, she claims that the circuit court erred in denying her alimony and attorneys' fees, that the award of child support in the amount of $100 a month was inadequate and that certain portions of the provisions dealing with the marital residence were improper.

Mrs. Sullivan filed a complaint for divorce on September 13, 1976. A divorce decree was subsequently entered on January 20, 1977, which made dispositions of the various items of the parties' property and findings with respect to child custody, support and alimony. Purportedly, these dispositions and findings were made in accordance with an agreement between the parties; however, on April 13, 1977, the circuit court vacated this decree finding that the parties had not in fact reached a complete agreement which was sufficient to support the decree.

A new hearing on Mrs. Sullivan's complaint was conducted on September 23, 1977, and on September 30, 1977, the circuit court entered a new decree granting her a divorce on mental cruelty grounds. The court's decree awarded the custody of the parties' minor child, Daren Kay Sullivan, to Mrs. Sullivan. In addition to the denials of alimony and attorneys' fees and the award of $100-a-month child support, the decree made the following orders which Mrs. Sullivan also attacks in this court: (1) that Mrs. Sullivan hold her husband, Darrell Gene Sullivan, harmless for any debt that she incurred on account of the purchase of a 1970 Chevrolet automobile; and (2) that she hold him harmless for any bills relating to medical treatment or hospital care provided to her during the course of the marriage which were unpaid at the time of the divorce decree's entry.

With respect to the marital residence, the decree made the following disposition. Possession of the residence was awarded to Mrs. Sullivan and Daren; however, under the scheme of the decree their possession is limited in duration. Upon the first occurrence of any of three events, their possession is to be terminated and a sale of the residence effected. The three triggering events are the death of Mrs. Sullivan, her remarriage or Daren's attainment of 18 years of age. During Mrs. Sullivan's and Daren's possession, it is Mr. Sullivan's obligation to pay all mortgage payments, insurance and taxes due on the residence and one-half of all "major" repairs made on the premises. However, upon the sale of the house, Mr. Sullivan is to receive a return of all sums of money expended by him under the above terms of the decree before an equal division of the net proceeds of the sale is made between the parties.

Mrs. Sullivan contends that the court erred both in ordering a sale of

the house and in providing for a full return of all payments made by Darrell Sullivan during her occupancy of the house.

The first issue we will address is whether the court erred in denying Mrs. Sullivan alimony.

■■ The law with respect to alimony under the Divorce Act (Ill. Rev. Stat. 1977, ch. 40, par. 1 *et seq.*) is well established. The purpose of an alimony award is to furnish support to the wife or to contribute to her partial support. (*Stotlar v. Stotlar* (1977), 50 Ill. App. 3d 790, 365 N.E.2d 1097; *Gilmore v. Gilmore* (1975), 28 Ill. App. 3d 36, 328 N.E.2d 562.) The proper measure of alimony is the need of the wife considered in connection with the husband's ability to pay. (*Stotlar v. Stotlar*; *Scruggs v. Scruggs* (1974), 23 Ill. App. 3d 1004, 320 N.E.2d 406.) No single criterion is controlling and each case will depend on its own individual facts. (*Scruggs v. Scruggs.*) The amount of the award lies within the sound discretion of the trial court and its decision will not be set aside unless it is contrary to the manifest weight of the evidence. *Gilmore v. Gilmore*; *Hoffmann v. Hoffmann* (1968), 40 Ill. 2d 344, 239 N.E.2d 792.

■■ After considering the evidence in this case, we find that it was a gross abuse of discretion to deny plaintiff alimony and that such denial was contrary to the manifest weight of the evidence.

The need of Mrs. Sullivan was clearly established in the circuit court. At the time of the hearing, Mrs. Sullivan's monthly take-home pay from her employment with the office of the circuit clerk of Jackson County was $348. This money was the only source of income from which she could attempt to meet the needs of herself and the parties' 14-year-old daughter, Daren. It was Mrs. Sullivan's unrebutted testimony that it would take between $600 and $700 each month to support them and that this figure would not allow them to save any money or pay off any outstanding debts, which from her testimony appear to exceed $3000.

Despite this showing of Mrs. Sullivan's financial inadequacy to provide the necessities for her daughter and herself, the court chose not to award her any alimony. In view of the fact that Darrell Sullivan appeared well able to pay alimony, this was clearly error.

Darrell Sullivan is the plant manager of Cal Crest Outerwear in Murphysboro, Illinois. He has held that position for 11 years. At the time of the hearing, his monthly take-home pay was $1223, and his gross incomes for 1976 and 1975 respectively were $21,350 and $20,470. He testified as to his monthly bills. When the bills which need not be recurring and the payment on the marital house are excluded, his monthly expenses at the time of trial were approximately $392. This amount should now be reduced by $72 since by his testimony a monthly obligation in that amount to a credit company would have come to an end prior to the present time. He is well able to contribute to his ex-wife's partial support.

We, however, will not set an alimony award here but rather will remand this cause to the circuit court for further proceedings so that it may determine an appropriate award of alimony. We choose to do this for two reasons. First, the circumstances of the parties may have significantly changed in the time which has intervened since the original hearing. Second, there is a serious question presented as to what form of alimony would be best suited to the facts of this case. This question can best be resolved in the circuit court.

■ Although in Illinois an award of periodic alimony is judicially preferred to alimony in gross because the court retains jurisdiction of the cause to make modifying orders as they become appropriate (*Musgrave v. Musgrave* (1976), 38 Ill. App. 3d 532, 347 N.E.2d 831; *Schwarz v. Schwarz* (1963), 27 Ill. 2d 140, 188 N.E.2d 673; *Honey v. Honey* (1970), 120 Ill. App. 2d 102, 256 N.E.2d 121), an award of alimony in gross is proper where the circumstances indicate that periodic alimony would not be feasible (*Musgrave v. Musgrave*; *Dmitroca v. Dmitroca* (1967), 79 Ill. App. 2d 220, 223 N.E.2d 545).

■ We believe that there are elements present in this case which would sustain an award of alimony in gross should the circuit court see fit to make such an award on remand. There is evidence in the record that Mr. Sullivan tends to spend his money in a profligate manner. Even defendant depicts himself as a "big spender," a plant manager who can spend money the way he wants to. At trial, defendant agreed that he spent $8000 in the six months immediately preceding the hearing, partially on foolishness, and that he lost $500 on the flip of a coin in the Spanish Key Lounge in Carbondale. Under these circumstances the feasibility of ordering him to make continuing periodic payments is fully as questionable as where a spouse does not pay his bills (*Smothers v. Smothers* (1962), 25 Ill. 2d 86, 182 N.E.2d 758) or is heavily indebted (*Simpson v. Simpson* (1963), 29 Ill. 2d 49, 193 N.E.2d 10). (See *Musgrave v. Musgrave*.) We would make the further comment that if the circuit court awards alimony in gross, it would be particularly appropriate to include defendant's interest as a joint tenant in the marital residence in that award. (See *Martin v. Martin* (1977), 49 Ill. App. 3d 1011, 365 N.E.2d 182; *Colvin v. Colvin* (1971), 132 Ill. App. 2d 959, 270 N.E.2d 61.) Both parties at trial appeared to fully recognize the benefits accruing to Daren's remaining in the home that she has been accustomed to living in.

At this point it is appropriate to comment on defendant's argument that the plaintiff should be estopped under the release of errors doctrine from seeking reversal of the portions of the decree which were unfavorable to her.

The doctrine provides that a party to a divorce decree cannot accept those portions of the decree which are beneficial to him and afterward

prosecute an appeal to reverse those parts which are unfavorable to him, where to do so would place the opposing party at a distinct disadvantage upon a reversal of the decree. *Royster v. Hammel* (1977), 51 Ill. App. 3d 710, 366 N.E.2d 535; *Gregory v. Gregory* (1974), 24 Ill. App. 3d 436, 321 N.E.2d 122; *Adams v. Adams* (1976), 44 Ill. App. 3d 656, 358 N.E.2d 734.

In support of his estoppel argument, defendant directs our attention to a document which he filed in the circuit court on November 15, 1977, in response to the plaintiff's post-trial motion. This document, which was denominated "reply and affirmative pleading," alleges that on October 3, 1977, the plaintiff cashed a certificate of deposit which had previously been jointly owned but had been awarded to her by the divorce decree. According to the "affirmative pleading" the certificate yielded over $1200.

■■ It is our opinion that this act would not place defendant at such a distinct disadvantage upon the reversal of any of the challenged provisions of the decree so as to justify invoking the release of errors doctrine. The record reflects that the certificate was purchased by Mrs. Sullivan with $1000 which she inherited from her father. The certificate was placed in both parties' names, creating a donative interest in Mr. Sullivan of approximately $600. We believe that on remand the circuit court can adequately accommodate defendant's lost interest in this certificate when determining what would be an equitable award of alimony.

Also, defendant has filed a motion to supplement the record on appeal with material which he feels would help this court to fully appreciate the merits of his argument with respect to the cashing of the certificate of deposit. This motion has been taken with the case. After due consideration, we deny the motion since the material which is sought to be added does not affect our decision in this case.

The next issue is whether the court's award of $100 a month child support was against the manifest weight of the evidence.

Child support awards are determined by accommodating the needs of the child with the available means of the parties. (*Fields v. Fields* (1977), 54 Ill. App. 3d 400, 369 N.E.2d 586; *Knox v. Knox* (1975), 31 Ill. App. 3d 816, 334 N.E.2d 891.) Among the factors to be considered in determining the amount of child support are the ages of the parties, their condition of health, the relative property and income of the husband and wife, and the station in life of the parties. *Fields v. Fields*; *Knox v. Knox*.

■■ Our previous discussion concerning the financial situation of the parties revealed that Mrs. Sullivan's income is insufficient to support herself and her daughter Daren. Assuming that one-half of the sum which Mrs. Sullivan stated was necessary to support them would be expended for Daren, $100 a month child support is patently inadequate in view of

the evidence as to defendant's financial means. Consequently we must reverse the child support provision and direct the circuit court to enter a new order as to child support which properly reflects the needs of the child as proved in the new proceedings.

We next consider whether the court erred in denying Mrs. Sullivan attorneys' fees.

It is well settled law that the allowance of attorneys' fees in a divorce proceeding rests in the sound discretion of the trial court, and exercise thereof will not be interfered with unless such discretion is clearly abused. (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576; *Canaday v. Canaday* (1964), 30 Ill. 2d 440, 197 N.E.2d 42.) After considering the evidence in connection with the applicable rules of law as to allowance of attorneys' fees, we find that the court abused its discretion in denying plaintiff attorneys' fees.

■■ In order to justify allowance of attorneys' fees in a divorce case, the party seeking the relief must show financial inability to pay and the ability of the other spouse to do so. (*Gasperini v. Gasperini*; *Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282.) However, financial inability is not synonymous with destitution. The income and assets of both parties must be considered, and if use of the available funds of the party seeking the attorneys' fees would strip the person of the means of his support and undermine his economic stability, financial inability to pay such fees is shown. *Kaufman v. Kaufman*; *Gasperini v. Gasperini*.

The evidence at trial adequately established both Mrs. Sullivan's inability to pay her attorneys' fees, and defendant's ability to do so. Mrs. Sullivan had an income of only $348 a month with which to support two people, and aside from the furnishings of the marital residence, the only asset assigned to her in the decree with any immediate cash value was a certificate of deposit purportedly worth $1200. Since she already had outstanding debts in excess of $3000, the award of this certificate could have little positive effect upon her inability to pay attorneys' fees. In contrast, Mr. Sullivan had a yearly income of approximately $21,000 with take-home pay of $1223 a month. His monthly expenses as proved at trial do not diminish his ability, provided by his income, to pay his wife's attorneys' fees. Consequently, we direct the circuit court to conduct further proceedings to determine just and equitable attorneys' fees and to enter an appropriate order making defendant liable for them.

Since it is quite likely that the circuit court will make an entirely different disposition with respect to the marital residence upon remand, we need not comment at length upon the contentions concerning the decree's present disposition of the residence. We do note, however, that the defendant's assertion in his brief that the present disposition of the

residence must be considered an award of alimony in gross is absurd.

Defendant apparently believes that since he made all of the payments on the house that any interest with respect to it which his wife received in the decree must be considered alimony in gross. This argument ignores one telling fact. The residence was held in joint tenancy; it must therefore be presumed that defendant intended to make a gift to his wife of a one-half interest in the property. Since defendant did not attempt to rebut this presumption, Mrs. Sullivan is held to have a full one-half interest in the marital residence. The present disposition, however, would not provide her with the full value of her proprietary interest in the residence in the event of a sale since the decree directs her to pay back all sums expended by defendant during her possession for repairs, and mortgage, tax and insurance payments. This is error since a joint tenant is equally liable for the cost of necessary repairs as well as payment of the mortgage and real estate taxes even though he is out of actual possession of the jointly held property. (*Gilmore v. Gilmore*; see also *Anderson v. Anderson* (1978), 62 Ill. App. 3d 468, 378 N.E.2d 1079.) Defendant should not be allowed reimbursement for his share of such payments. *Gilmore v. Gilmore.*

Plaintiff's final contention is that the court erred in requiring her to assume sole responsibility for her unpaid hospital and medical bills and the money owed on her automobile. Since we have already determined that this cause must be remanded for further proceedings with respect to an alimony award and since these debts are relevant to such a determination, we find that it would be best to reverse these provisions so that the circuit court may reconsider all of the relevant information as to plaintiff's financial situation in arriving at an equitable award of alimony.

For the foregoing reasons, we reverse the judgment of the circuit court of Jackson County and remand this cause for further proceedings consistent with this opinion.

Reversed and remanded.

G. J. MORAN, P J., and KARNS, J., concur.